**2023-1772, -1966**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

### HALO ELECTRONICS, INC.,

*Plaintiff-Appellant*

v.

### PULSE ELECTRONICS, INC., FKA PULSE ENGINEERING, INC., PULSE ELECTRONICS CORPORATION, FKA TECHNITROL, INC.,

*Defendants-Cross-Appellants*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA IN CASE NO. 2:07-CV-00331-APG-PAL
JUDGE ANDREW P. GORDON.

---

### PLAINTIFF-APPELLANT'S OPENING BRIEF

---

John A. Dragseth
Michael J. Kane
FISH & RICHARDSON P.C.
60 South 6th Street, Suite 3200
Minneapolis, MN 55402
Telephone: (612) 335-5070

***Attorneys for Appellant***

July 20, 2023

# CERTIFICATE OF INTEREST

Counsel for Appellant Halo Electronics, Inc. certifies:

1.    The full name of every party or amicus represented by me is:

>   Halo Electronics, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

>   None/Not Applicable.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

>   None/Not Applicable.

4.    The names of all law firms and the partners or associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4):

>   Fish & Richardson P.C.: John C. Adkisson, Juanita Brooks, Joshua Bleet, William R. Woodford; Harmon & Davies, P.C.: Joshua L. Harmon

5.    Other than the originating case(s) for this case, are there related or

prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

    None/Not Applicable.

6.    Provide any information required under Fed. R. App. P. 26.1(b)

(organizational victims in criminal cases) and 26.1(c) (bankruptcy

case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

    None/Not Applicable

July 20, 2023                    */s/ John A. Dragseth*
                                John A. Dragseth

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..................................................... I

STATEMENT OF RELATED CASES ...................................................... 1

JURISDICTIONAL STATEMENT .......................................................... 1

INTRODUCTION .............................................................................. 2

STATEMENT OF THE ISSUES ON APPEAL ....................................... 3

STATEMENT OF THE FACTS AND CASE ............................................ 4

    I.     PULSE'S WILLFUL INFRINGEMENT .................................. 4

    II.    THE DISTRICT COURT TWICE DENIES
         ENHANCEMENT AND FEES—ONCE USING OUT-
         MODED LAW, AND ONCE BY IGNORING THE LAW ....... 6

    III.    THE DISTRICT COURT ACCEPTS THE BURDEN OF
         RULING ON INTEREST, AND ADMINISTRATIVELY
         CLOSES THE CASE AFTER PULSE TAKES AN
         IMPROPER APPEAL .......................................................... 9

ARGUMENT SUMMARY ..................................................................... 15

ARGUMENT ....................................................................................... 16

    I.     STANDARD OF REVIEW ................................................ 16

    II.    THE BOARD LEGALLY ERRED IN ITS REFUSAL
         TO AWARD ENHANCEMENT OR FEES ........................... 16

        A.    The District Court's Enhancement Analysis Was
             Legally Flawed and Violated the Seventh
             Amendment ................................................................. 16

        B.    The District Court's Reliance On Pulse's Opinion
             Letters Was Legally and Logically Flawed ................. 25

III.    THE DISTRICT COURT LEGALLY ERRED BY
        CONCLUDING THAT HALO HAD TO FURTHER
        PROSECUTE AN ISSUE HALO HAD FULLY
        BRIEFED AND THE COURT HAD EXPLICITLY
        AGREED TO RESOLVE.......................................................30

IV.     THE DISTRICT COURT RELIED ON FACT
        FINDINGS THAT HAD NO SUPPORT AND WERE
        LEGALLY ERRONEOUS....................................................38

CONCLUSION ........................................................................42

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beacon Theatres, Inc. v. Westover*,
  359 U.S. 500 (1959) ............................................................... 27

*Eli Lilly & Co. v. Generix Drug Sales, Inc.*,
  460 F.2d 1096 (5th Cir. 1972) .......................................... 17

*Genentech, Inc. v. Novo Nordisk A/S*,
  108 F.3d 1361 (Fed. Cir. 1997) ................................... 16, 39

*Halo Elecs., Inc. v. Bel Fuse, Inc.*,
  Case No. 21-1861, 2022 WL 1435382 (Fed. Cir. May 6, 2022) .......... 12

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  2013 U.S. Dist. LEXIS 74799 (D. Nev. May 28, 2013) ...... 6, 19, 20, 21

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016) .......................................................... 6, 16

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  831 F.3d 1369 (Fed. Cir. 2016) .......................................... 8

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  857 F.3d 1347 (Fed. Cir. 2017) ......................................... 10

*Johnson v. U.S. Dep't of Treasury*,
  939 F.2d 820 (9th Cir. 1991) ............................................ 16

*Lehmann v. Revolution Portfolio LLC*,
  166 F.3d 389 (1st Cir. 1999) ........................... 10, 31, 32, 34

*Los Angeles Police Protective League v. Gates*,
  995 F.2d 1469 (9th Cir. 1993) ........................................ 17

*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004) ...................................................... 33

# TABLE OF AUTHORITIES (CONT.)

**Page(s)**

*Penn West Assocs., Inc. v. Cohen*,
   371 F.3d 118 (3d Cir. 2004) ................................................................ 10

*Read v. Portec*,
   970 F.2d 816 (Fed. Cir. 1992) ................................................. 18, 21-25

*In re Seagate Tech.*, LLC,
   497 F.3d 1360 (Fed. Cir. 2007) ......................................................... 26

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   14 F.4th 1323 (Fed. Cir. 2021) ................................................... 20, 21

*U.S. v. Balistrieri*,
   981 F.2d 916 (7th Cir. 1992) ............................................................ 17

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) ........................................................ 17

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
   837 F.3d 1358 (Fed. Cir. 2016) ................................................... 21, 41

## Other

FED. R. CIV. P. 41(b) ....................................................................... *passim*

FED. R. CIV. P. 54(b) ............................................................................ 35

## STATEMENT OF RELATED CASES

There have previously been three appeals taken from the proceedings below (Federal Circuit Dockets 13-1472; 16-2006; and 21-1861).  Counsel for Plaintiff-Appellant is aware of no other case pending in any tribunal that will directly affect or be directly affected by this Court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction because this is a patent case. See 35 U.S.C. § 1331, 1338(a).  This Court has jurisdiction under 28 U.S.C. § 1295(a)(1), in that the district court's most recent rulings resolve, directly or indirectly, the last of all outstanding issues in the case.  This appeal is timely, as Halo filed its Notice of Appeal on April 5, 2023 (Appx2555) from the district court's final judgment of March 27, 2023 (Appx2554).  Pulse filed its Notice of Appeal April 14, 2023 (Appx2562-2563), leading to the cross-appeal in this case.

# INTRODUCTION

This is the fourth appeal in this case.  In each prior appeal, this Court or the Supreme Court faithfully applied the law to rule in Halo's favor.  Halo seeks the same result again, because the district court—at Pulse's urging—made legal errors in refusing to award enhancement and fees, and in applying Federal Rule of Civil Procedure 41(b).

In denying enhancement and fees, the district court relied centrally on its own findings about Pulse's intent that ran contrary to explicit and implicit findings made by the jury—a Seventh Amendment violation.  In one such finding, the district court even allowed Pulse to assert privilege over opinions of counsel before the jury and then waive the privilege after trial—reasoning that the letters wouldn't help Pulse until later, so that it made sense for Pulse to selectively hide them.

In applying Rule 41(b) for a supposed failure to prosecute, Halo had fully prosecuted the relevant issue by fully briefing it, and the district court then expressly promised that it would issue an order.  The district court's subsequent administrative closure contained no indication that it was made in error and that the court would not follow through on its promise to rule—and no duty arose in Halo to check on

the court.  Without such a legal duty, the court could not apply Rule 41(b) to deny a trial on damages and to reduce the awarded pre-judgment interest.

Halo in this appeal asks the Court to again apply controlling legal principles, and return the case for proper consideration of interest, enhancement, and fees, and a limited damages trial based on the existing record.

## STATEMENT OF THE ISSUES ON APPEAL

1.    Whether the district court legally erred in failing to follow the jury's findings on intent when denying enhancement and attorney fees.

2.    Whether the district court legally erred in applying Rule 41(b), where Halo had no legal duty to further follow up after it fully briefed its motion for pre-judgment interest, and the district court had explicitly stated that it would rule on the motion.

3.    Whether the district court improperly relied on irrelevant or unproven facts in granting Rule 41(b) relief.

# STATEMENT OF THE FACTS AND CASE

## I.    PULSE'S WILLFUL INFRINGEMENT

Halo is a small 15-person business founded and run by two brothers.  Its invention in this case relates to packages for surface mount electrical transformers—commonly used in laptop computers and networking equipment.  Appx756-784; Appx761; Appx1729; Appx1736-1739; Appx1923-1924.  Such transformers would often crack and warp from heat when they were soldered onto circuit boards.  Appx761; Appx1820-1822; Appx2302; Appx2307.  Companies like the much-larger Pulse had tried and failed to fix that problem by tightly encapsulating the transformer's wire coil inside its plastic package.  *Id*.  Halo took a different path, with an "open construction" that allowed for expansion—along with a soft silicon to hold the transformer coil, and a critical way of forming "terminal pins" that attached the transformer to a circuit board.  Halo obtained the three patents in this case for those inventions.  Appx761; Appx1822-1823; Appx800-841.

Halo's transformers had all the hallmarks of a true invention—*e.g.*, skepticism from a major customer (Hewlett Packard) that initially refused to purchase Halo's new transformers, surprise from other

customers, commercial success, and most important, copying by Pulse and others. Appx761; Appx1743; Appx1945; Appx1750-1755. The new transformer line was a $5 million/year product for tiny Halo by 1997—with sales to Cisco, Motorola, Siemens, Nokia, General Electric, and Alcatel-Lucent. Appx1743-1744; Appx842-843.

For its part, Pulse initially sold a variety of unsuccessful designs that moved away from Halo's patented features. But its employees admitted that those devices "will crack during the [solder] reflow process," that such was a "typical failure," and the employees believed "this is a killer for us." Appx762; Appx866-871.

So Pulse copied. The same year a Pulse engineer saw Halo's first patent, Pulse introduced a transformer with the exact construction shown in Halo's patents. Appx762; Appx2017; Appx1972; Appx2138. Pulse's sales of infringing products soon dwarfed Halo's. Appx872-873. And Pulse's management did nothing to analyze the validity of Halo's patents for years, even after its Director of Marketing and outside patent lawyers also learned of Halo's patents. Appx763; Appx2017; Appx2173-2174.

The jury decided these issues in finding that Pulse willfully infringed, and Pulse does not and cannot challenge the findings. Appx482.

## II.    THE DISTRICT COURT TWICE DENIES ENHANCEMENT AND FEES—ONCE USING OUT-MODED LAW, AND ONCE BY IGNORING THE LAW

The parties presented enhancement to the district court twice. The first time, the district court applied this Court's *Seagate* decision to deny enhancement under its view that Pulse presented defenses that were not "objectively baseless, or a 'sham.'" *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 2013 U.S. Dist. LEXIS 74799, at *45 (D. Nev. May 28, 2013). But the Supreme Court agreed with Halo that the "objectively baseless" requirement was misguided—so it removed that requirement, making it easier for a party like Halo to receive enhancement and fees. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016).

When considering the issue again on remand, the district court based its analysis on two key misreadings of case law:

> (1) reading *Halo* as a case that gives complete "deference" to district courts to re-weigh evidence of a defendant's intent; and

6

(2) reading this Court's decisions that hold that a willfulness
finding does not compel enhancement as saying that a
jury's underlying findings on intent are not binding at all.

Appx11; Appx15.  These legal errors led the district court to focus

entirely on its own opinions of Pulse's intent, without due regard for the

jury's unchallenged findings, which the Seventh Amendment

guarantees.  For example:

- The district court found "there is evidence that Pulse
independently developed expanded transformer designs similar
to that disclosed in Halo's patent." Appx19.  But this was
contrary to the evidence that Pulse copied Halo, which the jury
accepted into its willfulness verdict.

- The court relied on two legal opinions that Pulse received.
Appx16-20.  But Pulse had improperly gone sword-and-shield
with privilege on those opinions—withholding them (as a
shield) when Halo would be able to cross-examine the
participants and the jury was making fact findings on Pulse's
intent, but then producing the opinions (as a sword) long after
trial.

- The court found facts that a Pulse engineer analyzed the
patents, Appx20, but the court never reconciled that with the
jury's rejection of that story, which Pulse's corporate witness
admitted was a mere "cursory" review.  Appx2172-2173.

- The court noted that Halo offered Pulse a license without
making an infringement accusation, concluding that such an
action made it "hard to claim that Pulse subjectively knew it
was infringing at the time," Appx20-21—again, contrary to the
jury's finding that Pulse infringed willfully.

- Finally, the court noted that the Federal Circuit, in the first
appeal, had pointed to Pulse's obviousness defenses, Appx21—

7

though this was in the context of the since-dead "objective" prong of the enhancement test.

The district court certainly recognized contrary evidence on which the jury relied:

> Halo offers countervailing evidence, including that some of Pulse's employees may have been untruthful in depositions, that Pulse used its power in the electronics market to exploit its position, and that some of Pulse's witnesses made comments revealing that the company was not diligent in investigating Halo's patents. Halo also emphasizes the lack of affirmative evidence that Pulse relied on its opinion letters and its engineer's analysis. And I cannot ignore that Pulse's infringement went on for many years.

Appx21. But unlike the jury, the district court did not credit that evidence; it instead treated the jury verdict of willfulness as if it were merely advisory. And the court did not address the other *Read v. Portec* factors, despite Halo having briefed them in detail. Appx17-21; Appx756-784; Appx1488-1504. All this in the face of this Court's remand order that the district court was to "tak[e] into consideration the jury's ***unchallenged*** subjective willfulness finding as one factor in its analysis." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1381 (Fed. Cir. 2016) (emphasis added).

By re-finding facts on Pulse's intent contrary to the Seventh Amendment and this Court's remand order, the district court let Pulse

successfully challenge the jury's findings—and that error led directly to its refusal to award enhancement or fees.

## III. THE DISTRICT COURT ACCEPTS THE BURDEN OF RULING ON INTEREST, AND ADMINISTRATIVELY CLOSES THE CASE AFTER PULSE TAKES AN IMPROPER APPEAL

Some issues in this appeal arose because, as we now understand, an appeal by Pulse caused the district court to get confused. Specifically, before the U.S. Supreme Court granted review on the enhancement issue, the parties briefed accounting issues that included pre- and post-judgment interest, and supplemental damages. *See* Appc656-668; Appx640-641. The parties eventually resolved everything but pre-judgment interest. With that issue fully briefed, the district court issued an unequivocal confirmation that it understood that it needed to, and would, rule:

> The Court will take this issue under advisement and issue a written order.

Appx81 (Minutes of Proceedings, Docket Entry 605).[1] But Pulse had taken an appeal on the interest issue, Appx715-716—and at the time,

---

[1] The district court identified "this issue" to which it was referring as "the motion on the accounting and the interest calculation." *Id.* Pre-judgment interest is the sub-issue the court never addressed.

9

the district court had only partially addressed that issue. Halo thus

asserted that the appeal was faulty because there was no final

judgment, and this Court agreed, dismissing that appeal. *See Halo*

*Elecs., Inc. v. Pulse Elecs., Inc.*, 857 F.3d 1347 (Fed. Cir. 2017).

When the appeal returned, the district court resolved other briefed

issues that had returned from the Supreme Court, and put the case on

ice. Specifically, the district court resolved less then all the fully-briefed

issues and told the clerk to close the case (Appx11-23)—where a closure

of a non-final case is known as an administrative closure. *E.g., Penn*

*West Assocs., Inc. v. Cohen*, 371 F.3d 118, 128 (3d Cir. 2004) ("[A]n order

merely directing that a case be marked closed constitutes an

administrative closing that has no legal consequence other than to

remove that case from the district court's active docket."). The court

gave no indication why it chose this action, it said nothing about having

a "final" judgment, and it gave no indication that it believed the case

was final. And other cases have been closed with pending motions so as

to take the case off-docket, and then re-opened and resolved by the

court later. *E.g., Lehmann v. Revolution Portfolio LLC*, 166 F.3d 389,

392 (1st Cir. 1999). The parties have a "power to resurrect" such a

closed case "upon an appropriate application"—and a district court also has such power to reactivate a case to its active calendar. *Id.*

Halo made such an application after more than two years in 2017 after the court had not issued the order on interest that it had promised to issue. Appx1615-1634. The parties had previously discussed potentially reaching out to the court earlier, but Halo's lead counsel passed away and Pulse's counsel did not follow-up. Appx1636-1637. When Halo asked to reactivate the case, Pulse repeatedly asserted that the district court's 2017 action was "final"—despite the fact that the court never said anything about it being final, and despite the fact that finality requires resolving all outstanding issues, which the district court had not done. Appx1659-1687. The district court took a slightly different tack. It asserted that "the effect" of its ruling was finality, a circular assertion that seemed to depend on the district court's subjective belief—disclosed for the first time—that it thought the ruling had been final. Appx9-10.

This Court agreed with Halo that there had been no final judgment. But it *sua sponte* introduced a new issue that neither Pulse nor the district court had ever raised—volunteering that the district

11

court, on its own initiative, could consider the applicability of Federal Rule of Civil Procedure 41(b).  *See Halo Elecs., Inc. v. Bel Fuse, Inc.*, Case No. 21-1861, 2022 WL 1435382, at \*3 (Fed. Cir. May 6, 2022) (non-precedential).

On remand, the district court ordered the parties to confer and report on the Rule 41(b) issue, then to brief it.  Appx32-33.  Halo argued mainly that dismissal cannot occur without a prior warning, and that Halo had no duty to urge the district court to rule on the fully-briefed motion the district court had expressly committed to rule on.  Appx2473-2487.  For its part, Pulse asserted that Halo "could have" reached out to the district court, but Pulse did not point to any rule or decision that required Halo to do so.  Appx2498.  And Pulse alleged prejudice repeatedly, though its only "evidence" was an attorney declaration that lacked any foundation for the declarant's personal knowledge, and also referred to supposed prejudice of a non-party named Yageo.  Appx2518-2519.  Halo pointed out each of these problems with Pulse's case.  Appx2520-2534.

Nonetheless, the district court applied Rule 41(b):

- The court started by relying on its prior finding that Halo had "unreasonably delayed its renewed request for

12

prejudgment interest." Appx2. But it ignored that the prior ruling was premised on the court's improper view at the time that its 2017 ruling was final, such that any delay off a final judgment would, of course, be unreasonable. But with the finality fallacy cleared away, that same analysis could not be re-used.

- The court noted that Halo knew the interest had not been awarded. Appx2. But again, absent a final judgment, that did not shift the burden to act from the court to Halo—and it doesn't show that Halo knew the court was not planning to rule as it had promised.

- The court then said it had not entered an administrative closing because "I entered what I thought was a final order, and a judgment was entered." Appx3 n.2. But the district court never communicated that subjective intent until years later, and the judgment was neither final in substance nor labeled as being final—so nothing the court did informed the parties that the court had erred. The district court closed a case without ruling on a pending motion or other finality. That is, by definition, an administrative closure.

- The court emphasized a need to manage its docket, Appx4, without recognizing that the freedom courts have given themselves with the judge-made administrative closure process for managing a docket comes with a corresponding responsibility to manage according to the federal rules.

- The court relied on supposed evidentiary prejudice because, in the district court's view, "it is likely [a damages] trial would create the need for additional discovery and expert witnesses" with potential dminished witness memories for 20-year old events. Appx5. But expert and fact discovery have both been fully conducted on the issue, Pulse provided no evidence that additional discovery would be needed, and the proper legal question is whether the delay from 2017 to 2020 (not the full 20 years) led to loss of witness memory.

In sum, the district court cited no rule or case indicating that a party in Halo's position has a burden to remind a court to rule on an issue the court has agreed to rule on. Rather, like Pulse, the district court jumped directly from the supposition that Halo could have prodded the court after the court failed to act quickly, to a conclusion that Halo was required to do so.

The court did agree to award a limited amount of interest, with 2017 marking the end date rather than 2023—and it asked the parties to compute the interest. Appx6-7. Halo used the legally-sanctioned, statutory-based approach it had previously briefed and the court had previously agreed to use—and plugged the relevant figures into a detailed spreadsheet to show interest of $1,294,006.62. Appx2536-2538. Pulse instead largely re-argued parameters for the interest calculation on which it had previously lost before it had taken its abortive appeal, and proposed $54,923.31. The district court accepted Halo's computations, and the parties stipulated to a stay of execution after Pulse indicated it had obtained a bond. Appx31; Appx2554; Appx2565-2566.

This appeal followed.

14

## ARGUMENT SUMMARY

**Enhancement/Fees**:  The district court denied enhancement and fees by rejecting the jury's fact findings, which are "unchallenged" in this Court's own words—a Seventh Amendment violation.  Those improperly-made findings on intent were central to the court's refusal to award enhancement and fees.  Additionally, the district court relied on opinion letters by applying a legally erroneous approach to waiver of privilege.  So this Court can and should vacate with an order for the district court to determine an amount of enhancement and fees by accepting the jury's findings on state of mind and not permitting late, one-sided use of the opinion letters.

**Rule 41(b)**:  The district court legally erred by failing to identify how a party that has fully briefed an issue and has been told by the court that the court is taking on the responsibility to resolve the issue, has a duty to prod the court to resolve it.  Pulse cited no rule or law, nor did the district court, that would shift to Halo the burden of addressing an error by a court that was hidden in the court's subjective, but unstated, misunderstanding.  And the fact that a party ***could*** further prosecute an already-fully-prosecuted case does not create a duty by the

party to further prosecute the case. Even apart from that, the

underlying findings by the district court in applying Rule 41(b) are

wholly unsupported.

## ARGUMENT

## I.    STANDARD OF REVIEW

Decisions about whether to enhance or award fees and whether to

apply Rule 41(b) are *generally* reviewed for an abuse of discretion. *E.g.*,

*Halo Elecs.*, 579 U.S. at 101; *Johnson v. U.S. Dep't of Treasury*, 939

F.2d 820, 825 (9th Cir. 1991). However, an abuse of discretion occurs,

as occurred here, where the court makes an "error of law or clearly

erroneous factual findings." *Genentech, Inc. v. Novo Nordisk A/S*, 108

F.3d 1361, 1364 (Fed. Cir. 1997).

## II.   THE BOARD LEGALLY ERRED IN ITS REFUSAL TO AWARD ENHANCEMENT OR FEES

### A.    The District Court's Enhancement Analysis Was Legally Flawed and Violated the Seventh Amendment

The district court legally erred by basing its enhancement and

fees decisions centrally on its own fact findings about Pulse's intent—

contrary to the jury's finding that Pulse infringed willfully. The law on

this point is plain: a district court, in making equitable decisions, must

accept any predicate explicit or implicit jury fact findings.  For example,

in the Ninth Circuit where this case was venued:

> This court has held that "it would be a violation of the
> seventh amendment right to jury trial for the court to
> disregard a jury's finding of fact." Thus, in a case where legal
> claims are tried by a jury and equitable claims are tried by a
> judge, and the claims are "based on the same facts," in
> deciding the equitable claims "the Seventh Amendment
> requires the trial judge to follow the jury's implicit or explicit
> factual determinations."

*Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th

Cir. 1993) (cleaned up).[2]  Applied to a patent case, decisions on a

defendant's state of mind and willfulness are subject to the Seventh

Amendment's guarantee of a jury trial, *e.g., WBIP, LLC v. Kohler Co.*,

829 F.3d 1317, 1341 (Fed. Cir. 2016), and a finding of willfulness fully

overlaps factually with multiple considerations in equitably deciding

whether to enhance damages or award attorney fees.  A court must,

---

[2] *See also Eli Lilly & Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096,
1108-08 (5th Cir. 1972) (vacating permanent injunction in patent
case for preceding jury determinations, and noting "the judge will be
bound at the subsequent hearing on the permanent injunction by any
factual determination that such a jury might make."); *U.S. v.
Balistrieri*, 981 F.2d 916, 934 (7th Cir. 1992) (noting that jury finding
on discrimination "controlled" in subsequent equitable injunction
determination).

therefore, in determining enhancement and fees, accept all explicit and implicit findings of the jury on a defendant's intent.

The district court's fundamental error on enhancement and fees here was in rejecting the jury's findings on Pulse's intent. The proper approach would have been to first look at factors like those in *Read v. Portec*, 970 F.2d 816, 829 (Fed. Cir. 1992). Then, upon considering a factor that relates to Pulse's intent, the court should have adopted facts encapsulated by the jury's finding that Pulse infringed willfully, and conducted any further analysis from that start. But the district court here instead made its own fresh decisions on Pulse's intent that ran contrary to the jury's, and made those findings the centerpiece of its analysis. For example:

- Contrary to the jury' finding that Pulse copied Halo's patents, and the jury's necessary finding from that evidence, the district court relied on its own conclusion that "there is evidence that Pulse independently developed expanded transformer designs similar to that disclosed in Halo's patent." Appx19.

- Contrary to the jury's findings that Pulse's engineer was not credible and had no corroboration, that any analysis he did was "cursory," and that Pulse had never shown it relied on any analysis by the engineer, the court found its own contrary facts that he analyzed the patents and communicated his views to management. Appx20-21.

- Contrary to the jury's necessary finding that Pulse knew it was infringing and intended to do so, the court concluded that a

party like Pulse would not think it was infringing when a competitor approaches it to provide a license, unless the competitor makes an express charge of infringement. Appx20-21. Such a finding is also contrary to the common sense understanding that patentees are careful about making explicit infringement assertions lest they be subjected to a declaratory judgment action.

- As described in more detail below, the court relied on Pulse obtaining opinion letters, whose only possible relevance would be on Pulse's supposed intent. Appx20.

And while the district court recognized contrary evidence, its ultimate analysis was driven by its belief that "Pulse submits evidence that it had a basis to believe that it was not infringing Halo's patent or that the patent was invalid," "evidence that its management knew of these defenses," and a supposed lack of "evidence that Pulse intentionally set out to infringe Halo's patent." Appx21. All of these findings on enhancement went to Pulse's state of mind, and ran contrary to the jury's findings tied to its willful infringement verdict.

The district court appears to have believed that the case law freed it from being bound by the jury's implicit and explicit findings on Pulse's state of mind. ***First***, the court noted that the Supreme Court in *Halo* said that district courts have "discretion" to award or not award

19

enhancement.  Appx11; Appx15.[3]  That is fine as far as it goes—but it does not erase the requirement to accept the jury findings.  ***Second***, the district court noted that a finding of willfulness does not compel enhancement.  Appx15.  That too is fine as far as it goes—but it does not mean that a court can reject a jury willfulness verdict and underlying factual findings on a defendant's state of mind.  Rather, a district court must exercise its discretion after accepting the found facts of the jury, and if it is to not award enhancement, it must analyze and discuss countervailing considerations other than those.

The district court's approach here also runs contrary to the approach this Court (both before and after *Halo*) has set forth for enhancement.  For example, this Court in *SRI International, Inc. v. Cisco Systems, Inc.*, considered the issue of enhancement, and in doing so, began:

> First, we presume, as we must, that consistent with the jury instructions, the jury found that Cisco had no reasonable basis to believe that it did not infringe or that it had a reasonable defense to infringement.

---

[3] If anything, the *Halo* decision highlights that a district court's discretion to deny enhancement is limited, because *Halo* removed a court's ability to deny enhancement and fees in the face of a willfulness finding merely because a defendant's trial defenses had some objective basis.

14 F.4th 1323 (Fed. Cir. 2021). Thus, a court "must" start by accepting the jury findings when considering enhancement. Similarly, in *WesternGeco L.L.C. v. ION Geophysical Corp.*, in remanding for re-consideration of enhancement under the *Halo* standard, this Court instructed the district court to first consider whether substantial evidence supported the jury's willfulness verdict—a command it would never have given if the district court was free to set the willfulness verdict to the side. *See* 837 F.3d 1358, 1363 (Fed. Cir. 2016).

Even in *Read v. Portec*, the Court denied enhancement because the jury verdict of willfulness was not supported by substantial evidence. 970 F.2d at 829. If a court were able to deny enhancement without regard to the jury verdict, the *Read* court too would have simply denied enhancement, rather than taking the more difficult route of asking whether substantial evidence supported the jury verdict. In this case, the jury's verdict of willfulness is fully settled and not attackable—it needs to be the start of any enhancement/fees analysis and is binding on relevant fact issues regarding state of mind, as it was in these prior cases.

Notably, the district court didn't conduct a *Read* analysis, though Halo had briefed it heavily.  Although that might not be *per se* legal error, *Read* certainly shows both the sort of considerations a district court should consider and the central role a defendant's state of mind plays in them.  Specifically, the *Read* factors, typically followed by this Court, are:

(1)  whether the infringer deliberately copied the ideas or designs of another;

(2)  whether the infringer, when learning of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;

(3)  the infringer's behavior as a party to the litigation;

(4)  defendant's size and financial condition;

(5)  closeness of the case;

(6)  duration of defendant's misconduct;

(7)  remedial action by the defendant;

(8)  defendant's motivation for harm; and

(9)  whether defendant attempted to conceal its misconduct.

*Read*, 970 F.2d at 827.

Halo briefed all the *Read* factors to the district court, explaining how the jury's fact findings on willfulness affected each, and why they all together made this an exceptional case.  Appx769-782.  For example, Pulse copied Halo's invention (*Read* factor 1), when, after years of

failures, Pulse went in the opposite direction and started selling its

infringing products soon after a Pulse engineer learned of Halo's patent

in 1998.  Appx770-771.  The jury was instructed to consider copying—

and its willfulness finding reflects a recognition that Pulse copied.

Appx2367-2368; Appx531-541; Appx539.

In addition, Pulse did nothing meaningful to address Halo's

patents (*Read* factor 2).  Pulse encountered Halo's patents multiple

times from 1998 to 2001, did nothing at the time, and continued that

approach when Halo reached out about a license in 2002—with Pulse's

corporate 30(b)(6) witness admitting, "I'm not aware of anyone in the

company that I know of that made a conscious decision" that Pulse

could continue to sell the products after receiving Halo's letters.

Appx2018; Appx2173; Appx987-997 (Topic 22).  Pulse tried to point to

an engineer who said he reviewed the patents, but that had no

corroboration at all, and Pulse's corporate witness even admitted that

whatever review occurred was "cursory."  Appx2173.  And critically,

Pulse presented no evidence that any decision-maker relied on or even

knew of the engineer's alleged two-hour review of multiple patents

having more than 50 claims.  Appx2018.  The jury watched the

witnesses testify and properly rejected their stories—finding that Pulse did not have a good faith belief for its actions during the relevant period from 1998 through 2002.

Pulse also attempted to conceal its conduct—another indicator of deceptive intent (*Read* factor 9).  It never responded to Halo's 2002 letters despite its ongoing infringement, it didn't engage in licensing discussions, and it didn't try to explain its actions.  It hid the scope of its infringement even after being sued by trying to distance itself from Cisco and other OEMs who were incorporating Pulse's devices into products that they then imported into the U.S.—*e.g.*, via the testimony of its 30(b)(6) corporate witness that ran counter to internal Pulse documentation.  Appx779-780; Appx1910-1913; Appx1017-1019; Appx1020-1041.  This forced Halo to subpoena Cisco and a Cisco contract manufacturer to establish that Pulse's pricing discussions with Cisco were directly tied to its U.S. infringement.  Appx780; Appx1908-1910; Appx1916-1921.

Halo also presented compelling evidence on other *Read* factors.  For example, Halo pointed out how Pulse had unnecessarily increased the cost of the litigation (*Read* factor 3), that Pulse used its larger size

improperly (*Read* factor 4), that Pulse's defenses were weak both before and in this litigation (*Read* factor 5), that Pulse infringed for over a decade after it knew of the patents (*Read* factor 6), that Pulse expanded its infringement after this suit was filed (*Read* factor 7), and that Pulse stole market share for common customers using its infringement (*Read* factor 8). Appx773-780.

In sum, the district court over-read its discretion on enhancement and fees, and conducted its own factual inquiry into Pulse's state of mind that formed the great bulk of its analysis and ran contrary to law. That ruling should be vacated.

## B.   The District Court's Reliance On Pulse's Opinion Letters Was Legally and Logically Flawed

The district court's enhancement decision was infected with another, independent error. Specifically, central to the district court's analysis was a pair of opinion letters Pulse had withheld, as attorney-client privileged, all through discovery and through the trial. With the jury long gone and discovery long over, Pulse did an about-face and attached the opinions to its enhancement briefing.

Under standard waiver analysis, there is no basis for allowing such late waiver. In particular, the central concern with selective

assertion of privilege is the "sword and shield" issue—*i.e.*, a litigant cannot be allowed to withhold production so as to use the privilege as a shield, and yet later waive privilege and use the communications that were waived as a sword to help its case. *See, e.g., In re Seagate Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007). But that is precisely what Pulse did here—*i.e.*, it shielded the opinions so that Halo could not undermine them in discovery and before the jury. Once the jury ruled against Pulse, however, it saw no benefit in further shielding the letters and no risk in disclosing them. So it used them as a sword in the final briefing—a very sharp sword in the district court's view. Appx16-17. Even worse, Pulse agreed before trial not to do this. Appx1506-1515.

The district court skipped right past all of this. Rather, the court allowed use of the opinions at this late date because, in its view, "Pulse was not required to prove anything about its subjective beliefs before, so it made sense that it waited until now to produce these opinions in their entirety." Appx16. The court cited no legal support for that statement, and there is none—as the statement celebrates sword-and-shield use of privilege, contrary to law. The legally relevant point is that Halo was denied a fair opportunity to use the letters to prove up its case on

Pulse's subjective intent—apart from how Pulse wanted to use them—
so they were pertinent earlier (whether they would help Pulse or not).

It seems the Court, in fact, got to its flawed understanding
because it again viewed the jury's willfulness finding as wholly separate
from the enhancement determination: "Pulse is not relying on an advice
of counsel defense to a willfulness finding; it is offering the opinion
letters for the post-trial purposes of Halo's request for enhanced
damages." Appx16. As we explain above, however, and as this Court
explained in the cases above, the two issues are not separate—rather,
the enhancement determination must begin with acceptance of and
reliance on the willfulness determination, and cannot simply set it
aside. And again, neither Pulse nor the district court cited any case
that allowed assertion of privilege regarding willfulness before the jury,
followed by waiver after trial. *See Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959) (holding that the Seventh Amendment prevents a
court from making fact findings on an equitable issue before having a
jury trial on overlapping facts on legal issues).

Pulse's sword/shield action was particularly problematic because
of its timing. Specifically, Pulse held the letters until long after trial

and long after the close of discovery.  As a result, Halo was denied the

ability to question Pulse's witnesses about the substantive quality of the

opinions.  Halo also was denied the ability to question or even cross-

examine Pulse's witnesses on whether, how, and to what extent they

did or did not rely on the opinions.  That prejudice was particularly

severe here because the district court made reliance on the opinion one

of its few fact findings that led to its refusal to award enhancement or

fees.  Appx20.  The court's action allowed the exact sword-shield

action—in the worst way possible—that the case law (which the court

never addressed) is designed to prevent.

Although the district court noted in mop-up that it would use the

letters the same way even without waiver of the privilege, Appx17, this

again fundamentally misunderstands the law.  To use the opinions the

same way without looking at their content, one would have to assume

that the letters were ***favorable to Pulse***.  One cannot make that

conclusion directly, of course, and cannot logically infer it from the

assertion of the privilege any more than one can infer that unproduced

opinions were negative from the assertion of the privilege.  Rather, to

infer from the outside that an opinion was positive, one must take the

unsupported and incredibly cynical position that clients only obtain helpful opinions, instead of seeking and obtaining true legal advice. Notably, the district court again failed to cite any case law support for its action—and its attempt at a work-around on the privilege issues must fail too.

Finally, even putting all of Pulse's waiver chicanery to the side, the district court still erred as a matter of law in using the letters to excuse Pulse. Specifically, an opinion letter cannot be relied on in litigation if a company never relied on it before litigation—and Pulse presented no evidence that anyone relied on these opinion letters. To the contrary, Pulse's corporate 30(b)(6) witness made a binding admission on Pulse: "I'm not aware of anyone in the company that I know of that made a conscious decision [about the issue]." Appx2018; Appx2173; Appx987-997 (Topic 22). The district court did not explain how an uncommunicated and unrelied-upon opinion could be relevant at all, nor did it cite any case that had used an uncommunicated and unrelied-upon opinion.

To wrap up, the opinion letters were a central part of the district court's determination on enhancement and fees. The court used a

legally and logically incorrect analysis to rely on them.  So the determination must be vacated on this ground as a separate, independent basis.

## III. THE DISTRICT COURT LEGALLY ERRED BY CONCLUDING THAT HALO HAD TO FURTHER PROSECUTE AN ISSUE HALO HAD FULLY BRIEFED AND THE COURT HAD EXPLICITLY AGREED TO RESOLVE

Two issues in the case depend on an application by the district court of Federal Rule of Procedure 41(b):  a limited trial on damages and an award of pre-judgment interest.  The district court used Rule 41(b) to deny the limited trial, and to substantially lessen the interest by ending it in 2017 rather than 2023.

Rule 41(b) refers to "fail[ure] to prosecute" but does not apply to this case because Halo had fully prosecuted the pre-judgment interest issue.  Specifically, Halo had briefed the issue in full and no oral argument had been scheduled—so it was in the district court's hands. And critically, the district court had also expressly stated that it would "take this issue under advisement and issue a written order."  Appx81 (Minutes of Proceedings, Docket Entry 605).  The ball was fully in the district court's court—Halo had handled its burden to prosecute.

The district court's subsequent closing of a non-final case did not shift any relevant burden to Halo.  In its closing actions, the court never labeled any of its actions as "final," nor did it say or suggest that it believed them to be final.  And it said nothing explicit or implicit about wavering from it taking on the obligation to issue an order on the pending interest motion.  Thus, the only evidence available to the parties showed that the district court was going to be ruling on the fully-briefed interest motion.  There was no evidence to the contrary— implicit or explicit.  And certainly, there was nothing that additionally would have ***required*** Halo to do more.

Nor did the broader context create some burden on Halo, because it is normal for a court to administratively close a case that has pending briefing, and later re-open the case.  For example, in *Lehmann v. Revolution Portfolio LLC*, 166 F.3d 389, 392 (1st Cir. 1999), the district court entered a dismissal order without resolving fully-briefed motions, and 3.5 years later, reactivated the case and resolved the motions.  The defendant there had characterized the dismissal as a "final judgment," but the appellate court explained it was merely an "administrative closing of the case"—which is "a familiar, albeit essentially ad hoc, way

in which courts remove cases from their active files without making any final adjudication." *Id.* at 391-92.  Thus, it is known to close a case with motions pending, then re-open it much later.  Nothing in the context here can properly act to place a burden on a party to take on work the district court expressly recognized it was responsible for.

Indeed, administrative closures are vague in their very nature, and thus do not readily put a party on notice of anything other than that the case is being put on ice.  They are not mentioned in the federal rules, and judges use them for a variety of reasons, such that a judge's specific intent cannot be known unless the judge states it expressly.  So although we ***now*** know that the district court erred here, nothing in 2017 indicated that was the case, and thus Halo cannot be tasked with being required to know that the court erred rather than intended to administratively close the case until it could draft an order on the motion.

Indeed, that is objectively what the district court's non-final actions looked like here—*i.e.*, a court expecting a ruling to take some time, and acting to get it off the court's docket to avoid hassling from administrators.  This case had been pending for 10 years in 2017, and

was no doubt an administrative concern for the judge and perhaps for the chief judge and related administrators—where an administrative closure would take the case "off the books." It is not a party's place to interfere with courts doing so—and certainly not a party's duty to interfere. Parties should be able to expect that a court will rule as it says it will, especially when party interference is a good way for the party to get on the court's bad side. And there most definitely should not be a rule that requires parties to interfere. Such a rule would violate due process for the affected parties who had no notice of the court's erroneous subjective beliefs, and would lead over-cautious parties to reach out to courts whenever there is any delay, out of fear they will be blamed for not deducing a court's undisclosed, subjective error.

Any contrary holding would run contrary to multiple existing rules and rulings. ***First***, the presumption of regularity means that courts will "insist on a meaningful evidentiary showing" before entertaining doubts about the integrity of official acts or documents. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). There was nothing about the district court's actions in 2017 (let alone

"meaningful evidence") to overcome the presumption here that, when the court had explicitly agreed to make a ruling and had not made that ruling, the court *did not* understand its actions to be "final." Rather, the court was wholly silent about finality in 2017, which actually further supports an objective understanding, from the record, that the court had not gone back on its prior promise to issue an order on interest. There is most definitely no legal rule that overcomes Halo's ability to assume so, and that places a burden on Halo to presume the district court did not act regularly—and any such rule announced for the first time here would violate the notice aspect of due process. There is no basis in the rules or any case law for such a burden shifting.

*Second*, administrative closures have no substantive effect; rather, they simply remove a case from the court's docket until reactivation occurs. *E.g., Lehmann*, 166 F.3d at 392. In other words, once a case is re-opened, the closure has no lasting effect—it is as if the closure never occurred. Analyzed this case with no remaining effect from the closure now that it's been undone, we have a situation in which the parties fully briefed an issue and they had nothing more to do—certainly nothing more they were required to do. On top of that,

the district court had explicitly recognized that it needed to, and would, provide a ruling on the issue.  The parties would simply be waiting on the court to follow through.  So in the "closure has no ongoing effect" world—which the caselaw creates—there is no basis to push a burden onto Halo at all.

*Third*, such a burden would, in fact, be inconsistent with the Federal Rules of Civil Procedure.  Specifically, Rule 54(b) envisions the revising, "at any time," of any order or decision that adjudicates fewer than all the claims:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims … does not end the action as to any of the claims or parties and may be revised at any time before the entry of judgment adjudicating all the claims...

Fed. R. Civ. P. 54(b) (emphasis added). This specific rule, speaking to the ability to fix a non-final order like the one from 2017 here "at any time" trumps any effect that the much more general Rule 41(b) could possibly have.

As a practical matter, finding that Halo had a duty to ask the court for an update on the promised ruling, and failing to do so created waiver, will result in litigants having to periodically pester the courts

35

for updates or risk waiving their rights.  This is not good for litigants or the courts.  And making a substantive ruling about a party that lacks sufficient notice also violates due process.

The district court fundamentally erred by relying on legally irrelevant points to apply Rule 41(b).  Centrally, the court reasoned (Appx3 n.2) that it ***subjectively intended*** its judgment to be final.  But a court's secret subjective belief—not clarified until ***after*** Halo moved to reactivate the case—cannot put such a burden on a party.  The district court certainly did not cite any authority for such a position, and Pulse had not even made the argument.  And indeed, the only actual communication of the district court's intent was that it was taking on the task of ruling on the pre-judgment interest issue.  When administratively closing the case, the court said or did nothing to undercut its acceptance of responsibility for the interest issue.

The district court also reasoned that its action cannot be terms an administrative closure because of its subjective beliefs, Appx3 n.2, but that is a total non-sequitur.  Whether one labels the court's actions an "administrative closing" or some other judge-made docket control activity, the fact remains that the district court never expressed its

intent or its error in any way.  Under any label, we have (a) a party that has fully briefed an issue, (b) a court that has expressly agreed that it will rule on the issue, and (c) subsequent activities that do not speak either way to the issue so as to put the party on notice.  Pulse has yet to find a rule or case that would shift the burden in such a situation, the district court cited none, and there can be none.

The district court also asserted that "Halo realized I had overlooked the issue of prejudgment interest."  Appx3 n.2.  But that assertion is unsupported and legally irrelevant.  ***First***, it is unsupported because the parties at most knew that the district court had not ruled on interest.  But that is wholly different from realizing that the court "overlooked" anything, and there is no dispute that the court did not communicate its misunderstanding until later.  ***Second***, it is legally irrelevant because the parties' subjective views should not control any more than the district court's subjective views should control.  And the district court's reasoning is an improper conflagration—urged by Pulse—that simply because a party ***could*** urge a court to rule quickly, that the party ***must*** do so.

More fundamentally, the issue here is not whether Halo could have petitioned the district court earlier and thus learned of the wholly-latent defect in the court's understanding. Rather, the issue is that no rule or case law requires a party to prod a district court for a ruling when the party has fully briefed an issue and placed it before that court. That is doubly true when the district court has taken the extra step to explicitly announce that it will provide a ruling on the issue. Certainly, the district court wanted to see this case end, but that desire is no substitute for a rule or ruling that compels it to end. Halo requests that this Court reverse the district court's ruling and return the case for proper action on damages and interest.

## IV. THE DISTRICT COURT RELIED ON FACT FINDINGS THAT HAD NO SUPPORT AND WERE LEGALLY ERRONEOUS

Wholly separate from the district court's failure to identify a basis for putting a burden on Halo to prod the court, the district court relied wholly, or at least almost wholly in its Rule 41(b) analysis, on fact findings that had no support or relevance.

***First***, the district court started by re-upping its prior finding that Halo had allegedly "unreasonably delayed its renewed request for

prejudgment interest." Appx2. The district court had made that prior finding under a premise that it had entered a final judgment in 2017, and Halo should have reacted more quickly to that final judgment. But the reasonableness *vel non* of a party's actions made in the face of a final judgment is wholly different than the party's actions when there is no final judgment. Indeed, the Federal Rules have stark deadlines for action after a final judgment, and it is likely rare that actions outside those deadlines would be reasonable. But that fundamentally changes if there is no final judgment—where there are no stated deadlines to act (even if one shifts burdens contrary to what we argue above). The district court's finding, then, depended on a legally-improper premise, and its judgment must fail for that reason alone. *Genentech,* 108 F.3d at 1364.

**Second**, the court emphasized that Halo knew the court had not yet resolved the interest issue. Again, that might be important if there had been a final judgment or even if the district court had expressed in 2017 its faulty belief that its rulings were final—but it did no such thing. Thus, the natural reading of the district court's 2017 actions was that it was putting the case on the back-burner (and taking the case's

39

pendency statistics off its docket) until it got around to ruling on the fully-briefed and pending interest motion. The fact that not only Halo, but also Pulse, knew that the interest issue was unresolved is certainly relevant to what they could have done, but not to what they must have done. The parties knew the court had not ruled, but not that the court had mistakenly not ruled.

*Third*, the district court relied on supposed evidentiary prejudice because, in the district court's view, "it is likely [a damages] trial would create the need for additional discovery and expert witnesses" with potential diminished witness memories for 20-year old events. There was absolutely no evidence for this finding, the district court cited none, and the record is wholly to the contrary. Specifically, both expert and fact discovery were complete on the relevant damages issue when the district court ruled against Halo on summary judgment. Thus, for the trial, the parties will be able to work off the already-generated record. The district court's assertion to the contrary is not based on record evidence or even on any argument that Pulse made.[4]

---

[4] Ordering a limited trial based on the existing record is the appropriate remedy for remand because Pulse never argued that such a trial would

***Fourth***, the district court faulted Halo for not asking for a limited damages trial immediately after *WesternGeco*.  Appx6 n.3.  But that wholly ignores that Halo could not raise the issue because the case was closed.  Once it became clearer that the district court was probably not going to act on the motion, as it had committed to do, Halo moved to re-activate the case and simultaneously raised the damages issue— precisely the proper action.

***Fifth***, the court emphasized a need to manage its docket.  But the court wholly missed that that point cuts both ways—*i.e.*, courts need freedom to manage their dockets but they also have responsibility to do so.  A court cannot have full freedom to use the unwritten rules of administrative closure to take a case off-line, and then push onto a party undisclosed mistakes that it makes when it does so.

These were the great bulk of the district court's reasoning for ruling as it did on the Rule 41(b) issue.  A court is obligated to rely on

---

be wrong on the merits, but only that it should be denied because the 2017 judgment was final and Halo allegedly delayed in the face of that finality, Appx1684-1687, and subsequently, only that it was finally decided (which it was not because the case was never final) and should be blocked by Rule 41(b), Appx2500-2515.  Pulse did not preserve any arguments on the merits of a limited damages trial.

relevant legal principles and actual record evidence, not supposition, so this Court should reverse even apart from the question of Halo's duty to act.

## CONCLUSION

For the reasons above, Halo requests vacatur of the district court's refusal to award enhancement and fees, and reversal of its decision under Rule 41(b), with an order to award interest according to its ordinary manner and to hold a limited trial on damages on the existing record.

Dated:  July 20, 2023       Respectfully submitted,

*/s/ John A. Dragseth*
John A. Dragseth
Michael J. Kane
FISH & RICHARDSON P.C.
60 S 6th St., Suite 3200
Minneapolis, MN 55402
Telephone: (612) 335-5070

*Attorneys for Appellant*

## <u>CERTIFICATE OF SERVICE AND FILING</u>

I certify that on July 20, 2023, I electronically filed the foregoing

Plaintiff-Appellant's Opening Brief using the Court's CM/ECF filing

system.  Counsel for appellee were electronically served by and through

the Court's CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir.

R. 25(e).

*/s/ John A. Dragseth*
John A. Dragseth

# **CERTIFICATE OF COMPLIANCE**

The Plaintiff-Appellant's Opening Brief is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b).  The brief contains 8600 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook, 14 Point.


Dated:  July 20, 2023              */s/ John A. Dragseth*
                                   John A. Dragseth

# ADDENDUM

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HALO ELECTRONICS, INC., | Case No.: 2:07-cv-00331-APG-PAL |
| Plaintiff | **Order** |
| v. | |
| BEL FUSE INC. and PULSE ELECTRONICS, CORP., | |
| Defendants | |

I previously ordered that Halo Electronics, Inc. was entitled to prejudgment interest on its $1.5 million jury award, but I did not settle the amount. ECF No. 591.  I subsequently entered judgment and closed the case without resolving the interest amount. ECF Nos. 633, 634.  Halo did not raise the issue of the missing prejudgment interest until nearly three years later. ECF No. 635.  Halo's motion for interest also requested a new trial for additional damages. *Id.*  I denied Halo's motion as untimely under Federal Rules of Civil Procedure 59 and 60. ECF No. 650.  On appeal, the Federal Circuit ruled that, because I never resolved the issue of prejudgment interest, my earlier "judgment was not a final, appealable judgment." ECF No. 654 at 4.  Thus, the case returned to me.

Based on the Federal Circuit's suggestion (ECF No. 654 at 7), I ordered the parties to brief whether I should deny Halo's request for interest and a new trial under Federal Rule of Civil Procedure 41(b).  Having considered the relevant factors, I will award Halo a limited amount of prejudgment interest but deny its request for a new trial on additional damages.

/ / / /

/ / / /

## I.    ANALYSIS

A case may be dismissed under Rule 41(b) if the plaintiff fails to prosecute it.  The rule does not "abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962).

> A Rule 41(b) dismissal "must be supported by a showing of unreasonable delay." *Henderson v. Duncan,* 779 F.2d 1421, 1423 (9th Cir. 1986).  In addition, the district court must weigh the following factors in determining whether a Rule 41(b) dismissal is warranted: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." *Id.*

*Omstead v. Dell, Inc.*, 594 F.3d 1081, 1084 (9th Cir. 2010), *overruled on other grounds by Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1117 (9th Cir. 2020).

I have already held that Halo unreasonably delayed its renewed request for prejudgment interest. ECF No. 650.  Shortly after my September 6, 2017 order and the judgment were entered, Halo's counsel, Craig Countryman, reached out to defendant Pulse Electronics' counsel to address the missing prejudgment interest and said they should contact the court about the issue "this week." ECF No. 662-1 at 2.  Pulse's counsel responded that prejudgment interest should not have been allowed. *Id.*  But Halo did nothing to address the issue until April 2020, when another of Halo's counsel reached out again to Pulse's counsel.[1] *Id.*  Halo knew about the missing interest and intended to raise it with the court for over 30 months but failed to do so.

---

[1] Unfortunately, Mr. Countryman passed away in the interim.  But Halo had been represented by other lawyers at the same law firm, including some from before trial until now.

1  Halo could and should have notified the court of this open issue.[2]  It unreasonably delayed

2  notifying me about the prejudgment interest issue.

3      **1.  The public's interest in expeditious resolution of litigation**

4          Resolution of this case has been anything but expeditious.  The case is now almost

5  exactly 16 years old, with trips to the Federal Circuit and the Supreme Court.  More to the point

6  here, the issue of prejudgment interest has lingered for almost six years since I ruled that Halo

7  was entitled to it and ordered the parties to try to agree on an amount. ECF No. 591.  After I

8  closed the case and neglected to award interest in September 2017 (ECF Nos. 633, 634), Halo

9  ignored the issue for another three years, until it filed its motion on July 30, 2020 (ECF No. 635).

10         Resolving the prejudgment interest issue now can be done expeditiously.  But Halo's

11 request for a new trial on additional damages (ECF No. 635) would further delay this already

---

13  [2] Halo incorrectly refers to my 2017 order and the judgment as an "administrative closure" of the
14  case, so Halo had no burden to correct the error. *See, e.g.*, ECF No. 662 at 5-6.

15      Administrative closings comprise a familiar, albeit essentially ad hoc, way in which
        courts remove cases from their active files without making any final adjudication. *See*
16      *Corion Corp. v. Chen,* 964 F.2d 55, 56–57 (1st Cir. 1992) (holding that an order deeming
        a case "administratively closed" was not a final, appealable order absent a separate
17      document to signal the court's "view that the case had concluded").  The method is used
        in various districts throughout the nation in order to shelve pending, but dormant,
18      cases. . . .  We endorse the judicious use of administrative closings by district courts in
        circumstances in which a case, though not dead, is likely to remain moribund for an
19      appreciable period of time.

20  *Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 391–92 (1st Cir. 1999).  That is not what
    happened here.  I entered what I thought was a final order, and a judgment was entered. *See* ECF
21  No. 650 at 1 ("[E]ven though the word 'final' did not precede the word 'judgment,' the effect of
    the order and judgment were the same as a final judgment: the case was over, subject to another
22  appeal.").  I did not consider the case "dormant" or "moribund," but rather over.  Halo realized
    that I had overlooked the issue of prejudgment interest but did not notify me of that mistake for
23  three years.  Although the Federal Circuit deemed the judgment not final because of the
    outstanding prejudgment interest issue, my order was not an administrative closure of this case.

lengthy case. "The public's interest in expeditious resolution of litigation always favors

dismissal." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citation omitted).

**2. The court's need to manage its docket**

"[T]he district court [is] in the best position to evaluate the effects on its docket . . . ."

*Medina v. Hinojosa*, 850 F. App'x 590, 591 (9th Cir. 2021). This case has consumed

considerable resources of this court over the past 16 years. I can resolve the prejudgment interest

issue now without significant additional effort, but conducting another trial on additional

damages would add to this court's already busy docket. This factor favors denial of the new trial

Halo requests.

**3. The risk of prejudice to the defendants**

After the 2017 judgment, Pulse was sold. ECF No. 663 at 1-2. Pulse alleges its new

owners are "completely unrelated to Pulse" and "had nothing to with this litigation from the time

it was filed" until Halo moved for prejudgment interest and a new trial. *Id.* at 2. Pulse thus

contends it would be severely prejudiced if I grant Halo's motion.

The prejudice to Pulse of awarding prejudgment interest is limited to the amount

awarded. No new trial is needed to calculate that amount. And any prejudice to Pulse on this

issue is lessened by two factors. First, Pulse knew the prejudgment interest issue had not been

resolved and Halo intended to pursue it. *See* ECF No. 662-1. Second, Pulse's new owners

purchased the company while the case was on appeal. Thus, the purchasers assumed the risk that

additional litigation (and related fees, costs, and potential damages) could arise. There is

minimal risk to Pulse by an award of prejudgment interest.

But Pulse will suffer prejudice if I order a new trial for additional damages. "In

determining whether a defendant has been prejudiced, we examine whether the plaintiff's actions

4

1    impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of

2    the case." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987).  Pulse points out that

3    its new owners are "not in possession or control of any of the documents, evidence, witnesses, or

4    institutional knowledge necessary to proceed to defend itself at trial." ECF No. 663 at 12.  And it

5    is likely that another trial would create the need for additional discovery and expert witnesses.

6    Even new discovery may not be sufficient as some of the acts giving rise to this lawsuit occurred

7    over 20 years ago, and witnesses' memories no doubt have diminished.

8         Overall, Pulse would not be significantly prejudiced by an award of prejudgment interest,

9    but it would be prejudiced by a new trial on additional damages.

10        **4.  The public policy favoring disposition of cases on their merits**

11        I previously ruled that Halo was entitled to prejudgment interest.  Only the amount was

12   left unresolved.  Awarding that interest now facilitates resolution of the case on the merits.

13        Denying Halo a new trial on additional damages does not violate public policy because

14   Halo is not entitled to those damages.  Halo argues that after my order and judgment were

15   entered, the Supreme Court's decision in *WesternGeco LLC v. Ion*, 138 S.Ct. 2129 (2018),

16   changed the law and opened the door for Halo to recover additional damages that were

17   previously not recoverable.  *WesternGeco* came down years after the trial in this case, and nearly

18   a year after judgment had been entered.  "New legal principles, even when applied retroactively,

19   do not apply to cases already closed." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758

20   (1995) (citation omitted).  When judgment was entered in this case in 2017, the case was closed

21   and effectively over.  All issues except the overlooked prejudgment interest had been resolved.

22   Resurrection of the case to address prejudgment interest should not give Halo the ability to

23   reopen other issues, like damages, based upon a subsequent change in the law.  As I stated

5

1    previously, "parties are entitled to rely on court judgments and move on with their affairs. . . .

2    Reopening this case and conducting another trial would be unfair to Pulse and contrary to the

3    goal of finality of judgments." ECF No. 650 at 2.[3] Here, public policy favors bringing finality to

4    this case and denying a new trial.

5         **5. The availability of less drastic sanctions**

6         Halo proposes a sanction less drastic than dismissal under Rule 41(b): awarding interest

7    only up to the time of the 2017 judgment. This is a fair resolution because that judgment should

8    have included an award of prejudgment interest, and Halo's unreasonable delay in raising the

9    issue after that would not be rewarded by including interest to today. Pulse is not punished

10   because interest is not awarded between 2017 and now.[4] But there is no less drastic sanction

11   than denial regarding Halo's request for a new damages trial.

12        **II.    CONCLUSION**

13        I will award Halo prejudgment interest at the rate set forth in Nev. Rev. Stat. § 17.130,

14   compounded annually, through September 6, 2017. Prejudgment interest runs from "the time of

15   service of the summons and complaint . . . ." Nev. Rev. Stat. § 17.130(2). Halo shall prepare an

16   updated calculation of that amount and provide it to the defendants. If the parties agree on the

17   amount, they will submit a stipulation to that effect. If they disagree, each side may file a brief

18

---

19   [3] And, Halo waited over two years after *WesternGeco* was decided before filing its motion for a
     new damages trial based on that case. If it truly believed that it was entitled to ask for a new
20   trial, it should have moved shortly after that decision came down. *See James B. Beam Distilling
     Co. v. Georgia*, 501 U.S. 529, 542 (1991) ("Public policy dictates that there be an end of
21   litigation; that those who have contested an issue shall be bound by the result of that contest, and
     that matters once tried shall be considered forever settled as between the parties. . . . Finality
22   must thus delimit equality in a temporal sense, and we must accept as a fact that the argument for
     uniformity loses force over time.") (simplified).

23   [4] Post-judgment interest under 28 U.S.C. § 1961 would begin to accrue after entry of the new,
     final judgment (once the amount of prejudgment interest is resolved). *See* below.

1  (not to exceed four pages) explaining their respective positions.[5]  The stipulation or briefs are

2  due by March 24, 2023.

3          Based on the Rule 41(b) factors, I deny Halo's request for a new trial on additional

4  damages.

5          I THEREFORE ORDER that Halo is entitled to prejudgment interest at the rate set forth

6  in Nev. Rev. Stat. § 17.130, compounded annually, from the time of service of the summons and

7  complaint through September 6, 2017.  Halo shall prepare an updated calculation of that amount

8  and provide it to the defendants.  The parties shall file either a stipulation about the prejudgment

9  interest amount or separate briefs (not to exceed four pages) explaining their respective positions.

10  The stipulation or briefs are due by March 24, 2023.

11          I FURTHER ORDER that Halo's request for a new trial on damages is denied.

12          DATED this 7th day of March, 2023.

13

14                                                        _____

                                                         ANDREW P. GORDON

15                                                       UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23  _____
    [5] The parties need not repeat their legal arguments in their prior memoranda about the interest
    calculation (ECF Nos. 592, 593) as I have reviewed them again and the parties' positions are
    preserved.

7

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HALO ELECTRONICS, INC., | Case No.: 2:07-cv-00331-APG-PAL |
| Plaintiff | **Order (1) Granting Prejudgment Interest and (2) Directing Entry of Final Judgment** |
| v. | |
| PULSE ELECTRONICS CORPORATION, | |
| Defendants | |

     I previously ordered that Halo Electronics, Inc. is entitled to prejudgment interest "at the rate set forth in Nev. Rev. Stat. § 17.130, compounded annually, from the time of service of the summons and complaint through September 6, 2017." ECF No. 665 at 7.  I directed the parties to submit briefs calculating that amount.  Based on Halo's calculation (ECF No. 666 at 3), I will award Halo $1,294,006.62 in prejudgment interest.[1]

     I THEREFORE ORDER the clerk of the court to enter judgment in favor of Halo Electronics, Inc. and against Pulse Electronics Corporation in the total amount of $3,182,049.62.[2] This amount must be reduced by any payments against the judgment already received by Halo. *See* ECF No. 666 at 1 n.2.

     DATED this 27th day of March, 2023.

 

                                 _____
                                 ANDREW P. GORDON
                                 UNITED STATES DISTRICT JUDGE

---

[1] That amount is calculated at 6.25%, which is the prime rate as of July 1, 2017 plus 2%. *See* Nev. Rev. Stat. § 17.130(2).

[2] This amount is calculated as $1,500,000 (jury verdict per ECF No. 482) plus $388,043 (supplemental damages per ECF No. 591) plus $1,294,006.62 (prejudgment interest).

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HALO ELECTRONICS, INC., | Case No.: 2:07-cv-00331-APG-PAL |
| Plaintiff | **Order** |
| v. | |
| BEL FUSE INC., et al., | |
| Defendants | |

This case was recently remanded from the United States Court of Appeals for the Federal Circuit. ECF Nos. 654-56, 658. I direct the parties to confer on how the case should proceed and to file a stipulation if they can agree. If they cannot agree, then the parties shall file a status report setting out their respective positions.

I THEREFORE ORDER that by July 22, 2022, the parties shall file either a stipulation or a status report setting forth their respective positions on how to proceed in this case.

DATED this 23rd day of June, 2022.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HALO ELECTRONICS, INC., | Case No.: 2:07-cv-00331-APG-PAL |
| Plaintiff | **Order** |
| v. | |
| BEL FUSE INC., et al., | |
| Defendants | |

This case was recently remanded from the United States Court of Appeals for the Federal Circuit. ECF Nos. 654-56, 658. I directed the parties to confer on how the case should proceed and to file either a stipulation if they can agree or a status report setting out their respective positions if they could not agree. ECF No. 659. The parties have filed a status report. ECF No. 660.

I am inclined to dismiss the remainder of this case under Federal Rule of Civil Procedure 41(b) for failure to prosecute. But before doing so, I will give the plaintiff an opportunity to address the relevant factors. *See Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).

I THEREFORE ORDER that by August 12, 2022, the plaintiff shall show cause why I should not dismiss for failure to prosecute its requests for pre-judgment interest and for a trial on damages for sales transactions excluded in prior rulings. The defendants may file a response by August 26, 2022. The plaintiff may file a reply by September 2, 2022.

DATED this 27th day of July, 2022.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

AO450 (NVD Rev. 2/18)   Judgment in a Civil Case

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

HALO ELECTRONICS, INC.,

                       Plaintiff,

v.

PULSE ELECTRONICS
CORPORATION,

                     Defendant.

                                  JUDGMENT IN A CIVIL CASE

                                  Case Number: 2:07-cv-00331-APG-PAL

___   **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

___   **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

X   **Decision by Court.** This action came for consideration before the Court. The issues have been considered and a decision has been rendered.

### IT IS ORDERED AND ADJUDGED

that judgment is hereby entered in favor of Halo Electronics, Inc. and against Pulse Electronics Corporation in the total amount of $3,182,049.62.

3/27/2023
Date

DEBRA K. KEMPI
Clerk

/s/ J. Callo
Deputy Clerk

Appx2554

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HALO ELECTRONICS, INC., | Case No.: 2:07-cv-00331-APG-PAL |
| Plaintiff | **Order Denying Motion for Pre-Judgment Interest and a Damages Trial** |
| v. | [ECF No. 635] |
| BEL FUSE INC., et al., | |
| Defendants | |

On September 6, 2017, I ruled on several pending motions. ECF No. 633. I directed the clerk of the court to enter judgment and close the case. Judgment was entered that same day. ECF No. 634. Nearly three years later, plaintiff Halo Electronics, Inc. filed a motion requesting that I award pre-judgment interest and schedule a trial on additional damages. ECF No. 635. The motion is not timely so I deny it.

Halo argues that my order does not say that the judgment is the "final" judgment, and the issue of pre-judgment interest remained undecided. But even though the word "final" did not precede the word "judgment," the effect of the order and judgment were the same as a final judgment: the case was over, subject to another appeal. If Halo believed an issue remained unresolved, it should have brought that to my attention then, not three years later.

Federal Rule of Civil Procedure 59(e) states that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." "The Rule gives a district court the chance to rectify its own mistakes in the period immediately following its decision." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (internal quotations and citation omitted). Halo did not take advantage of that opportunity.

1    Federal Rule of Civil Procedure 60(b) provides other grounds for Halo to obtain relief

2  from my order and judgment.  To the extent Halo believes the judgment was entered by mistake,

3  it was required to file its motion within one year after entry of the judgment. Fed. R. Civ. P.

4  60(c).  If Halo believed my order and the judgment were somehow void, or that there was "any

5  other reason that justifies relief" (Fed. R. Civ. P. 60(b)(6)), it should have moved "within a

6  reasonable time." *Id*.  Even if the pre-judgment interest issue was unresolved at the time

7  judgment was entered, Halo knew that then and had ample opportunity to raise the issue.  Filing

8  a motion nearly three years later is not "within a reasonable time."  Halo's motion is untimely.

9    Halo also requests that I reopen the case and hold a damages trial based upon a 2018

10  Supreme Court decision that it contends allows for damages that were precluded by prior

11  caselaw.  "New legal principles, even when applied retroactively, do not apply to cases already

12  closed." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995).  This case is 14 years old

13  and judgment was entered three years ago.  The parties are entitled to rely on court judgments

14  and move on with their affairs.  Indeed, defendant Pulse Electronics was sold in 2018.

15  Reopening this case and conducting another trial would be unfair to Pulse and contrary to the

16  goal of finality of judgments.

17    I THEREFORE ORDER that the plaintiff's motion **(ECF No. 635) is DENIED.**

18    DATED this 15th day of March, 2021.

19

20    _____
      ANDREW P. GORDON
21    UNITED STATES DISTRICT JUDGE

22

23

2